10-1565-bk (L)
Smith v. Silverman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: April 5, 2011                                    Decided: May 20, 2011)

Docket Nos. 10-1565-bk (L), 10-1655-bk (con)

IN RE: RICHARD A. SMITH,

        *Debtor.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD A. SMITH, CAROLE ANN CARUSO, and NELSI SMITH,

        *Appellants,*

  v.                                         Nos.   10-1565-bk (L),
                                                             10-1655-bk (con)

KENNETH P. SILVERMAN and LIBERTY MUTUAL INSURANCE
COMPANY,

        *Appellees.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Before: WINTER, WALKER, and CABRANES, *Circuit Judges.*

Appellants Richard A. Smith, Carole Ann Caruso, and Nelsi Smith appeal two orders of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*), dated March 24, 2010, and March 30, 2010, affirming orders of the United States Bankruptcy Court for the Eastern District of New York (Dorothy T. Eisenberg, *Judge*), dated January 26, 2009, and May 13, 2009. The Bankruptcy Court orders denied appellants' motion to reopen Richard Smith's bankruptcy case and dismissed a complaint filed by appellants against the trustee of the bankruptcy estate and the trustee's bondholders. We hold that the District Court properly determined that the Bankruptcy Court (1) did not abuse its discretion in denying appellants' motion to reopen and (2) properly dismissed appellants' complaint. Accordingly, the orders of the District Court are **AFFIRMED**.

---

[*] The Clerk of Court is directed to amend the caption to read as shown above.

1

Additionally, in light of the frivolous nature of this appeal, appellants and their counsel are ordered to show cause why sanctions should not be imposed under Federal Rule of Appellate Procedure 38, 28 U.S.C. § 1927, and the inherent power of this Court.

THOMAS J. MCGOWAN, Meltzer, Lippe, Goldstein & Breitstone, LLP, Mineola, NY, *for appellants*.

ANTHONY C. ACAMPORA, Silverman Acampora LLP, Jericho, NY, *for appellee* Kenneth P. Silverman.

CAROLYN K. FIORELLO (David Westermann, Jr., *on the brief*), Uniondale, NY, *for appellee* Liberty Mutual Insurance Company.

PER CURIAM:

Richard A. Smith ("Smith" or "debtor"), his wife Nelsi Smith, and his sister Carole Ann Caruso (jointly, "appellants"), seek to reopen debtor's Chapter 7 bankruptcy case for the purpose of pursuing an adversary proceeding against Kenneth P. Silverman ("Silverman" or "trustee"), who was the Chapter 7 trustee of debtor's estate, and Liberty Mutual Insurance Company ("Liberty"), one of the trustee's bondholders. The United States Bankruptcy Court for the Eastern District of New York (Dorothy T. Eisenberg, *Judge*) denied appellants' motion to reopen, *In re Smith*, 400 B.R. 370, 372 (Bankr. E.D.N.Y. 2009), and the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*) affirmed this judgment, *In re Smith*, 426 B.R. 435, 437 (E.D.N.Y. 2010).

## BACKGROUND

The bankruptcy proceeding that appellants seek to reopen commenced on January 12, 1996, when debtor filed for relief under Chapter 13 of the Bankruptcy Code. The case was later converted to a Chapter 7 proceeding, and on April 29, 1997, Silverman was appointed trustee of debtor's estate.

2

The only potential sources of recovery for the trustee were pending civil suits that debtor, along with his wife, had initiated several years prior to the commencement of the bankruptcy proceeding. On July 11, 1990, nearly seven years before Silverman was appointed as trustee, the Smiths filed two separate lawsuits in the Supreme Court of the State of New York relating to a dispute with debtor's former company, Meadow Mechanical Corp. ("Meadow"). One suit was a "dissolution action" brought by debtor and his wife—who owned 22.5% and 5% of Meadow stock, respectively—against Meadow's remaining shareholders following the discharge of debtor as president of Meadow. The defendants in that suit initially served their notice of election to buy out the Smiths' shares pursuant to New York law, *see* N.Y. Bus. Corp. Law § 1118(a),[1] but then subsequently sought to revoke this election. The Appellate Division, Second Department thwarted these efforts by holding the defendants to their election; additionally, the Second Department ordered that the defendants post a $750,000 security bond as the parties continued to negotiate an acceptable share price. *See Smith v. Russo*, 646 N.Y.S.2d 711 (2d Dep't 1996).

In a separate action (the "note action"), the Smiths sought to recover on a $275,000 promissory note that Meadow had issued to Richard Smith. The Smiths unsuccessfully sought summary judgment, with the Second Department concluding that material issues of fact remained concerning whether the conditions for payment on the note had been satisfied. *Smith v. Meadow Mech. Corp.*, 610 N.Y.S.2d 76 (2d Dep't 1994).

---

[1] In relevant part, § 1118(a) states:

> In any proceeding brought pursuant to section eleven hundred four-a of this chapter, any other shareholder or shareholders or the corporation may, at any time within ninety days after the filing of such petition or at such later time as the court in its discretion may allow, elect to purchase the shares owned by the petitioners at their fair value and upon such terms and conditions as may be approved by the court . . . .

N.Y. Bus. Corp. Law § 1118(a).

Neither the dissolution action nor the note action had been resolved by the time Silverman took over as trustee of the bankruptcy estate of Smith in 1997. After investigating these claims, the trustee concluded that Meadow had a negative value as of the date of the dissolution action, and thus attempted to settle the dissolution action for $350,000. Debtor and his wife vigorously opposed this proposal on the grounds that this sum was insufficient. The Bankruptcy Court rejected the proposed settlement in 2004.

The following year, debtor moved to have the Bankruptcy Court compel the trustee to prosecute the dissolution action and the note action and to commence a handful of related claims arising out of the same underlying business dispute. In response, "[t]he Trustee informed the court that the estate was administratively insolvent, and any litigation on the derivative claims that the Debtor sought to compel the Trustee to bring would have cost between $50,000 and $100,000 in litigation costs without any assurance of a significant award to the estate." *In re Smith*, 400 B.R. 370, 374 (Bankr. E.D.N.Y. 2009). Acting on this information, the Bankruptcy Court denied debtor's motion; debtor did not appeal that order.

On July 14, 2005, at debtor's request, the Bankruptcy Court authorized the trustee to abandon to debtor the dissolution action, the note action, and any related claim that debtor may have wished to pursue. *Id.* Now back in control of his own claims, debtor moved in state court to amend the dissolution action to add some related claims. This motion was denied by the Supreme Court, Queens County (Kelly, J., Oct. 18, 2006, Index No. 11882/90), on the grounds that the relevant statute of limitations had run in 2000. *Id.* at 374-75.

After the trustee filed a no-asset report on February 7, 2007, the bankruptcy case was closed on February 13, 2007, and the trustee was duly discharged. On July 2, 2008, appellants filed a motion to reopen the bankruptcy proceedings so that appellants could commence an adversary proceeding against

4

the discharged trustee's counsel for malpractice stemming from a failure to pursue debtor's claims against Meadow. *Id.* at 375. The Bankruptcy Court denied the motion because, the Court concluded, appellants failed to establish privity with the trustee's counsel. *Id.*

On October 24, 2008—more than 18 months after the final decree closing the case had been entered—appellants filed yet another motion to reopen debtor's bankruptcy case in the Bankruptcy Court. Appellants[1] sought to reopen the bankruptcy case in order to commence adversary proceedings against the trustee himself, as well as the insurers who issued his surety bond. Appellants' underlying complaint, which was filed with the Clerk of the Bankruptcy Court on the same day as the motion to reopen, alleged, in pertinent part, that the trustee breached his fiduciary duty by negligently failing to pursue and investigate the dissolution action, the note action, and related claims belonging to the bankruptcy estate, and that the insurance companies, including Liberty Mutual, who had issued blanket trustee surety bonds, failed to ensure the trustee's faithful performance of his duties. The Bankruptcy Court denied appellants' motion to reopen and then subsequently granted Liberty's motion to dismiss appellants' underlying complaint.

On appeal from the judgment of the Bankruptcy Court, the District Court affirmed both orders in separate opinions. *See In re Smith*, 426 B.R. 435, 437 (E.D.N.Y. 2010) (affirming the denial of appellants' motion to reopen); *In re Smith*, No. 09-cv-2563, 2009 U.S. Dist. LEXIS 126366 (E.D.N.Y. Mar. 30, 2010) (affirming the granting of Liberty's motion to dismiss). In addition to affirming the orders of the Bankruptcy Court, the District Court *sua sponte* considered whether sanctions would be appropriate under either Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927, in light of appellants' apparent desire to prolong needlessly the litigation. As the District Court explained:

---

[1] Nelsi Smith and Carole Ann Caruso each have standing to pursue these claims, along with Richard Smith, regardless of the merit of the claims, *vel non*, because each separately purchased claims held by debtor's creditors.

"Appellants simply are not satisfied to allow the final Orders of this Court or those of the Bankruptcy Court to stand after *fourteen* long and tortured years of litigation. Moreover, it appears that some form of sanctions is necessary to prevent Appellants from further unreasonable and vexatious multiplying of these proceedings." *In re Smith*, 2009 U.S. Dist. LEXIS 126366, at *13. While appellants were ordered to show cause why sanctions should not be imposed, the District Court ultimately declined to press the issue any further. Appellants, meanwhile, have decided to press their luck with the instant appeal.

## DISCUSSION

"Our review of an appeal that proceeds from the bankruptcy court to the district court is plenary and independent. We affirm factual findings unless clearly erroneous and review legal conclusions *de novo*." *State Bank of India v. Chalasani*, 92 F.3d 1300, 1306 (2d Cir. 1996). A bankruptcy judge's decision to grant or deny a motion to reopen pursuant to 11 U.S.C. § 350(b) shall not be disturbed absent an abuse of discretion. *Id.* at 1307; *see generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks and citations omitted)).

Upon a review of the record, we conclude that the Bankruptcy Court acted well within its discretion in denying appellants' October 24, 2008 motion to reopen. The only purpose of granting the motion to reopen would have been to allow appellants to pursue adversary claims against the trustee (and the bondholders), but we agree with the Bankruptcy Court that these underlying claims were entirely without merit.

The gravamen of appellants' putative complaint is that the trustee negligently failed to pursue certain legal claims belonging to the bankruptcy estate. "[A] bankruptcy trustee is immune from suit

for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order." *In re Ctr. Teleprods., Inc.*, 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990); *see also In re M & S Grading, Inc.*, 541 F.3d 859, 867 (8th Cir. 2008) (affirming under the business judgment rule the bankruptcy court's approval of a bankruptcy trustee's decision not to pursue litigation on behalf of the estate). As both the Bankruptcy Court and the District Court determined, the trustee exercised his sound business judgment in declining to assume the expense of raising and/or pursuing the legal claims identified by appellants. Appellants' criticism of the trustee's failure to prosecute the dissolution and note actions evidences a remarkable chutzpah. Both of these actions had been pending—in a seemingly dormant state—for *several years* before Silverman was ever named trustee. Moreover, the Bankruptcy Court, as far back as 2005, had held that the trustee was not required to prosecute those two claims, a decision that appellants could have appealed, but did not. Finally, the claims apparently still remain pending in the state court even though the trustee relinquished all control over them in 2005.

Appellants' failure to bring either of these matters to a conclusion is particularly telling in light of the fact that appellant Nelsi Smith was a co-plaintiff in both of these state actions, and was thus in a position independently to pursue essentially the same claims she now faults the trustee for not pursuing on behalf of the bankruptcy estate. Nelsi Smith evidently exercised *her* business judgment not to press forward with these claims, and yet has no problem finding fault with the very same business judgment exercised by the trustee.[2]

The Bankruptcy Court correctly decided not to reopen debtor's bankruptcy proceedings so that

---

[2] At oral argument, counsel for appellants indicated that Nelsi Smith's efforts in prosecuting the dissolution and note actions in the state courts were hampered by a lack of financial resources; of course, this is the same argument made by the trustee in explaining why he had declined to press forward with the claims. *In re Smith*, 400 B.R. 370, 374 (Bankr. E.D.N.Y. 2009).

appellants could pursue their meritless complaint, and the District Court correctly affirmed the judgment of the Bankruptcy Court.[3]

Although not raised by appellees directly, we cannot help but register our concern with appellants' frivolous conduct in pursuing this appeal. In short, the issues presented to us by appellants have either been long settled by the Bankruptcy Court, or plainly refuted by appellants' own conduct. The District Court warned appellants that their conduct was, in its view, borderline sanctionable, *see In re Smith*, No. 09-cv-2563, 2009 U.S. Dist. LEXIS 126366, at *13 (E.D.N.Y. Mar. 30, 2010), and yet appellants pressed ahead with this appeal—thereby obliging the trustee, Liberty, and the courts to stay involved in proceedings that should have ended years ago.

We have recently recalled that, "[p]ursuant to the terms of Federal Rule of Appellate Procedure 38, 28 U.S.C. § 1927, and the inherent authority of the Court to consider sanctions on parties who pursue patently frivolous appeals and force this Court to consider—and the [appellees] to defend—vexatious litigation, we may, with adequate notice and opportunity to be heard, impose sanctions *nostra sponte*." *Gallop v. Cheney*, No. 10-1241-cv, 2011 U.S. App. LEXIS 8554, at *13 (2d Cir. Apr. 27, 2011). In light of the meritless appeal before us, we think that such sanctions may be warranted. Accordingly, appellants and their counsel are ordered to show cause, by no later than 21 days following entry of this decision and order, why they should not be sanctioned in the form of double costs and $5,000 in damages, for which appellants and counsel would be jointly and severally liable. The memorandum response shall be no more than twenty pages, double-spaced. Appellees shall respond within fourteen days of the filing of appellants' memorandum, in a supplemental letter brief that shall not exceed twenty pages, double-spaced.

---

[3]As appellants concede, the Bankruptcy Court's order removing their complaint from the Bankruptcy Court docket must necessarily be upheld if we conclude—as we do—that the Bankruptcy Court did not abuse its discretion in denying appellants' motion to reopen.

## CONCLUSION

For the foregoing reasons, the orders of the District Court are **AFFIRMED**. Appellants and their counsel have 21 days from the date of the filing of this opinion to file a written statement with our Court concerning the propriety of sanctions.